UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-22499-CV-MORENO
CRIMINAL CASE NO. 01-00396-CR-ROSENBERG
MAGISTRATE JUDGE REID

AL DOUGLASS WORDLY,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE REID

This cause is before the Court upon Movant Al Douglas[1] Wordly's ("Movant" or "Wordly") Amended Motion to Vacate pursuant to 28 U.S.C. § 2255 (the "Motion"). [Cv-DE 6]. Wordly seeks to vacate his conviction as to Count 3 under 18 U.S.C. § 924(o), because conspiracy to commit Hobbs Act robbery is no longer a valid predicate for §§ 924(o) and 924(c) convictions. *See United States v. Davis*, 139 S. Ct. 2319 (2019). For the reasons set forth below, this Court recommends that Movant's Motion be **DENIED**.

I.   Background

This case involves a string of three home invasions that took place between June and September of 1997. Wordly and a crew of co-conspirators including Lenny Russell ("Russell"), Mark Bell ("Bell"), Morland Ivey ("Ivey"), Ulysses Cannon ("Cannon"), and Hubert Gilbert

---

[1] While the case caption spells Movant's name as "Douglass," Movant's *pro se* pleadings reflect that the correct spelling is Douglas. *See* Movant's Application for Leave to File a Second or Successive Motion to Vacate pursuant to 28 U.S.C. § 2255, *In re Al Wordly*, No. 20-11954 (11th Cir. May 5, 2020) [DE 1].

("Gilbert") planned to rob a series of homes they believed had large amounts of drugs and money. [CR-DE 185-1 at 20-43; CR-DE 170-1 at 44-72]. Movant participated in two of the three invasions.

**A.  June 20, 1997 Home Invasion**

The first home invasion took place on June 20, 1997. Prior to the invasion, Wordly, Russell, Bell, Ivey, Cannon, and Gilbert met several times to discuss their plans to rob the home. [CR-DE 185-1 at 22]. The men got information about the home's owner and contents from Gilbert and a man known only as "Spookey." [CR-DE 185-1 at 22; CR-DE 170-1 at 45]. Gilbert and Spookey apparently knew the owner and had been in the home before. [CR-DE 185-1 at 23]. Spookey and Gilbert told the men that the homeowner was a drug dealer who would be out of town, and that there would be 10 to 50 kilograms of cocaine and between $60,000.00 and $1,000,000.00 in cash in the house. [CR-DE 185-1 at 22; CR-DE 170-1 at 46]. After receiving the information, the co-conspirators began planning the robbery. They planned to tie up anyone in the house and ask for money and drugs so that they could later divide the contraband and sell the drugs individually. [CR-DE 170-1 at 47].

A few days before the home invasion, Bell, Wordly, Ivey, and Russell went to scope out the house but did not go in because they were "spooked." [CR-DE 185-1 at 25]. The night of the home invasion, Bell, Wordly, Russell, Cannon, Ivey, and others met at Bell's house to further discuss the drugs, the money, and the plan. [*Id*. at 26]. The men also brought duct tape, handguns, gloves, and ski masks. [CR-DE 185-1 at 26; CR-DE 170-1 at 50]. Wordly brought a .25 caliber pistol, which he exchanged with Russell, who was carrying a .45 caliber pistol, because Wordly planned to enter the house first. [CR-DE 185-1 at 27-28]. The men then got into Ivey's Honda and Gilbert's car and drove to the home. [CR-DE 170-1 51; CR-DE 185-1 at 28]. Once there, Bell cut a hole in the back gate of the housing development. [CR-DE 170-1, at 51; CR-DE 185-1 at 29].

The men drove through the hole, got out of the cars, and hid in the surrounding bushes. [*Id*]. Gilbert then picked the lock to the front door of the target home, and Bell and Wordly entered the house. [CR-DE 170-1 at 51-52; CR-DE 185-1 at 29].

Once in the home, the men found Odaysis Gordon, the homeowner's wife, and her two minor children and tied them up with duct tape. [CR-DE 170-1 at 52, 54-55; CR-DE 180-1 at 30-33]. Before the men could restrain Gordon, she attempted to shoot them with a .380 caliber pistol, but Cannon grabbed Gordon's hand and hit her, causing her to let go of the gun. [CR-DE 185-1 at 32; CR-DE 170-1 at 52-54]. Cannon then took the gun. [CR-DE 185-1 at 32, 34]. Once Gordon and her children were tied up, the men moved the three victims downstairs, where Bell and Wordly began asking Gordon where they could find drugs and money while Bell hit her repeatedly with a pistol. [CR-DE 185-1 at 33-36]. During this time, the other co-conspirators ransacked the house. [CR-DE 185-1 at 33-36, CR-DE 170-1 at 54-56]. They took between $4,000.00 and $6,000.00 in cash, jewelry, a video camera, and the .380 caliber pistol. After returning from the home invasion to Bell's house, the men split up the money. [CR-DE 170-1 at 59-60; CR-DE 185-1 at 39-40] Cannon kept the pistol. [*Id*.]

**B. August 1, 1997 Home Invasion**

The second home invasion took place on August 1, 1997. Like the first invasion, Bell, Ivey, Wordly, Gilbert, and Spookey met at Bell's house prior to the robbery to exchange information about the apartment and the owner and to plan the invasion. [CR-DE 170-1 at 61-62]. At the meeting, which took place on August 1, 1997 around 1:00 p.m., Spookey told the men that the owner was a record producer, that Spookey had been in the apartment before, and that the owner likely had drugs, money, and expensive musical equipment. [*Id*. at 62]. The men decided that they would rob the home later that evening. [*Id*.]. Like the first invasion, the men met at Bell's house

right before driving to the apartment. [*Id*. at 63]. The men again brought guns, ski masks, and gloves. [*Id*.].

Upon arriving to the apartment, Wordly and Bell kicked in the front door and entered the apartment first. [*Id*. at 66]. Wordly and Bell observed two people on the floor of the apartment but left them for the other co-conspirators to restrain. [*Id*.] Wordly and Bell continued to walk through the house where they found a second door. [*Id*.]. The pair kicked in the door and tried to enter the room, but a man began shooting at them from inside the room. [*Id*.]. A shootout between the man, Wordly and Bell ensued. [*Id*. at 66-67]. During the shootout, Wordly was shot. [*Id*.]. Wordly and Bell then ran out of the apartment and across the street to their getaway car. [*Id*. at 67-68]. Once in the car, the co-conspirators drove away and dropped Wordly off at his apartment. [*Id*. at 68-69]. Wordly was later taken to the hospital where he told police officers and others that he was shot while in the northwestern portion of Overtown, a neighborhood in Miami. [*Id*. at 69-70].

## II.   Procedural History

On July 6, 2001, a federal grand jury in the Southern District of Florida returned a superseding indictment charging Wordly with the following offenses:

1.  Conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846 (Count 1);

2.  Conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §1951(a) (Count 2);

3.  Conspiracy to use, carry, and brandish a firearm during and in relation to a crime of violence and a drug trafficking crime and to possess a firearm in furtherance of a crime of violence and drug trafficking crime as set forth in Counts 1, 2, 4, 5, 7, 8, 10, 11, 12, and 13 in violation of 18 U.S.C. § 924(c)(1)(A) and (o) (Count 3);

4. Attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a) (Count 4);

5. Hobbs Act robbery in violation of 18 U.S.C. §§1951(a) (Count 5);

6. Possession of a firearm in relation to, and in furtherance of, a crime of violence and drug trafficking crime, in violation of 18 U.S.C. § 924(c) as set forth in Counts 4 and 5 (Count 6);

7. Attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 7);

8. Attempted Hobbs Act robbery in violation of 18 U.S.C. §1951(a) (Count 8); and

9. Possession of a firearm in relation to, and in furtherance of, a crime of violence and drug trafficking crime, in violation of 18 U.S.C. § 924(c) as set forth in Count 7 and Count 8.

[CR-DE 51].

Counts 1, 2, and 3 were applicable to dates unknown, but beginning at least on or about June 20, 1997, the date of the first home invasion, through on or about September 23, 1997, the date of the last home invasion. [*Id.*]. Counts 4, 5, and 6 were based on the June 20, 1997 home invasion. [*Id.*]. Counts 7, 8, and 9 were based on the August 1, 1997 home invasion. [*Id.*]. The indictment listed each of the offenses charged in Counts 1, 2, 4, 5, 7, and 8 as predicate crimes-of-violence or drug-trafficking offenses for the § 924(o) and § 924(c) offense charged in Count 3. [*Id.*]. The grand jury did not specify which predicate offense it relied upon for the charge in Count 3, and the court did not instruct it to do so. [*Id.*].

At trial, Wordly and his co-defendants moved for a Rule 29 Judgment of Acquittal on certain Counts including Counts 2, 5, and 8. [CR-DE 155]. The court reserved ruling on the motion until the jury entered a verdict. [CR-DE 155; CR-DE 189].

5

The jury instructions specified that the jury could find Wordly or his co-defendants guilty of Count 3 if all of the following facts were proved beyond a reasonable doubt: (1) defendant committed a crime of violence as set forth in Counts 2, 5, 8, 11, 12 or 13 or a drug trafficking crime as set forth in Counts 1, 4, 7, or 10; (2) during and in relation to the commission of any of those offenses defendant conspired to use or carry a firearm, or conspired to possess a firearm in furtherance of a crime of violence or drug trafficking crime as charged; and (3) defendant knowingly conspired to use or carry the firearm, or knowingly conspired to possess the firearm. [CR-DE 158 at 17]. On May 6, 2002, the jury returned a unanimous general verdict convicting Wordly of all Counts. [CR-DE 164]. The jury did not specify which Counts it found were predicates for the § 924(c) and (o) offenses in Counts 3, 6, and 9.

On July 22, 2002, the court granted the defendants' Rule 29 Judgment of Acquittal as to Counts 5 and 8. [CR-DE 189]. On October 28, 2002, the court sentenced Wordly to a total of 660 months imprisonment, consisting of concurrent prison terms of 360 months as to Counts 1 and 4 and 240 months as to Counts 2, 3, and 7, and consecutive prison terms of 60 months as to Count 6 and 240 months as to Count 9. [CR-DE 222].

On October 31, 2002, Wordly appealed, [CR DE 224], however, the court of appeals affirmed the judgment. [CR-DE 254]. On April 20, 2004, Movant filed a *pro se* Motion to Vacate pursuant to 28 U.S.C. §2255. [CR-DE 255]. A magistrate judge entered a Report recommending that the Motion to Vacate be denied. *See Wordly v. United States*, No. 1-04-cv-20936 (S.D. Fla. Nov. 18, 2005), DE 28. The district court judge adopted the Report and closed the case. *Id*. at DE 29.

On June 16, 2016, Movant filed an Emergency Application for leave to file a successive motion to vacate sentence. *See Wordly v. United States*, No. 16-13620 (11th Cir. June 16, 2016).

Wordly argued that because of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), he no longer qualified as a career offender, thus his career offender sentence violated due process. *Id*. The Eleventh Circuit denied the application, reasoning that *Johnson* did not apply to Movant because the Sentencing Guidelines could not be unconstitutionally vague. *Id*. The court alternatively found that even if *Johnson* applied to the Sentencing Guidelines, Wordly had not made a *prima facie* showing that he was entitled to relief. *Id*. On June 24, 2016, Movant filed a Motion to Vacate pursuant to 28 U.S.C § 2255 with the district court making the same arguments. [CR-DE 372]. That Motion was denied as a successive § 2255 motion that should have been made to the Eleventh Circuit. [CR-DE 374].

On June 17, 2020, the Eleventh Circuit granted Wordly's application for authorization to file a second or successive §2255 motion to challenge his § 924(o) and § 924(c) conviction under Count 3. [CR-DE 402]. In his application, Wordly argued that his conviction under Count 3 was unconstitutional in light of *United States v. Davis*, 139 S. Ct. 2319 (2019). Specifically, he contended that he was actually innocent of his Count 3 conviction, because it was predicated on the conspiracy to commit Hobbs Act robbery charged in Count 2, which no longer qualified as a crime of violence. In its Order granting leave, the Eleventh Circuit stated:

> On the limited record before us, it is unclear whether the jury based Wordly's § 924(o) conviction on Count 3 solely on a crime no longer considered to be a crime of violence after *Davis*—conspiracy to commit Hobbs Act robbery—as opposed to also on one or more of his other offenses, also identified as predicates and unaffected by <u>Davis</u>. …. We therefore conclude that Wordly has made a *prima facie* showing that his Davis claim as to Count 3 satisfies the statutory criteria of § 2255(h)(2). *See* 28 U.S.C. § 2255(h)(2). We note, however, that Wordly, as the movant, will bear the burden of proving the likelihood that the jury based its verdict of guilty in Count 3 solely on the Hobbs Act conspiracy, and not also on the basis of one or more of the valid predicate offenses identified in Count 3. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (resting, on a long line of case authority, its conclusion that a *Johnson* § 2255 movant "bears the burden to prove the claims in his § 2255 motion"). Further, the substance of Wordly's § 924(o) firearm-conspiracy conviction is that he conspired to possess a firearm in

> furtherance of an agreement with his co-conspirators to rob drug dealers' residences and to distribute any drugs stolen in the robberies. Indeed, as part of this plan, Wordly in fact participated in armed home invasions of two residences in an attempt to take cocaine from them so he and his co-conspirators could distribute it. In even the limited record before us, there is some indication the planned robberies were inextricably intertwined with the charged firearm conspiracy and the attempts to possess with intent to distribute cocaine.

[Cv-DE 1].

On February 2, 2021, the case was stayed pending the resolution of the appeals in *Granda v. United States* and *Foster v. United States*. The Eleventh Circuit issued its opinion in Granda's case on March 11, 2021 and Foster's case on May 4, 2021. *See Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021); *Foster v. United States*, 996 F.3d 1100 (11th Cir. 2021). On July 1, 2021, the parties filed a Joint Motion to Reopen the Case, [Cv-DE 16], and the government filed a Notice of Supplemental Authority. [Cv-DE 17]. Wordly responded. [Cv-DE 18]. Subsequently, on July 6, 2021 the case was reopened and referred to this Court for a Report and Recommendation.

### III.   Procedural Bar

Wordly did not argue at trial or on direct appeal that his § 924(o) conviction under Count 3 was invalid because the § 924(c)(3)(B) residual clause was unconstitutionally vague. "[A] defendant generally must advance an available challenge to a criminal conviction on direct appeal or else the defendant is barred from raising that claim in a habeas proceeding." *Granda*, 990 F.3d at 1286 (quoting *Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013)). Wordly "therefore, procedurally defaulted this claim and cannot succeed on collateral review unless he can either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of the § 924(o) and § 924(c) convictions." *Granda*, 990 F.3d at 1286.

Wordly argues his claim is not procedurally defaulted because: (1) the error alleged is jurisdictional in nature; and (2) Wordly can show actual prejudice because, unlike the Movant in

*Granda*, he is challenging a mandatory consecutive term of imprisonment which added twenty-five years to his total sentence.

### A. The Claimed Error is not Jurisdictional in Nature

"[A movant] can avoid the procedural-default bar altogether, meaning he can raise a claim for the first time on collateral review without demonstrating cause and prejudice, if the alleged error is jurisdictional." *See United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (citing *United States v. Peter*, 310 F.3d 709, 711–13 (11th Cir. 2002)). Wordly claims that because *one* of the predicate offenses his § 924(o) and § 924(c) conviction in Count 3 was based upon is not a "crime of violence," his indictment contained allegations of conduct not covered under §§ 924(c) and (o). Thus, Wordly concludes that the district court committed jurisdictional error in convicting and sentencing him for Count 3.  In support of his argument, Wordly cites to a string of cases, all of which are inapposite and thus unpersuasive.

First, Wordly cites to *Peter*, 310 F.3d at 713, 715, where the Eleventh Circuit found jurisdictional error because the indictment "alleged a specific course of conduct that [was] outside the reach of the mail fraud statute." *Id*. at 715. Wordly fails to mention, however, that the *Peter* court specified that its holding applied to cases in which an indictment alleges *only* a non-offense. *Id*. at 714, 715. In other words, in *Peter*, the indictment consisted only of specific conduct that, as a matter of law, was outside the sweep of the charging statute. *Id*. at 711, 714. The Eleventh Circuit made clear in *Peter* that the failure to allege a crime in violation of the laws of the United States is a jurisdictional defect. *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) (citing *Peter*, 310 F.3d at 713–14; *United States v. McIntosh*, 704 F.3d 894, 901–03 (11th Cir.2013) (differentiating between jurisdictional and technical defects in indictments).

The same cannot be said for the indictment in this case. While Count 2, conspiracy to commit Hobbs Act robbery, is no longer a valid predicate for a conviction under §924 (c) and § 924 (o), Counts 1, 4, and 7 are still valid predicates. *See Granda*, 990 F.3d 1272, 1284–85. Count 3 clearly alleged a crime in violation of the laws of the United States.

Wordly's reliance on *United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018) fares no better. Like *Peter*, the error asserted in *St. Hubert* was that "'the indictment consisted only of specific conduct'—carrying, using, and brandishing a firearm during a Hobbs Act robbery and an attempted Hobbs Act robbery—that…was 'as a matter of law, ... outside the sweep of the charging statute.'" *Id*. at 343 (quoting *Peter*, 310 F.3d at 714). Indeed, in *St. Hubert*, the petitioner challenged his convictions under Counts 8 and 12 of the indictment, which charged him with carrying a firearm during the Hobbs Act robbery charged in Count 7 and using and carrying a firearm during the attempted Hobbs Act robbery charged in Count 11, respectively. *Id*. at 338–39. Because the petitioner there claimed that Hobbs Act robbery and attempted Hobbs Act robbery, which were the *sole* predicates on which his convictions were based, were not crimes of violence under § 924(c)(3)(A), the court properly found that his challenge was jurisdictional. *Id*. at 344.

Here, Wordly does not, and cannot, claim that the indictment alleged *only* conduct that falls outside of the scope of §§ 924(c) and 924(o), as Wordly's charge under Count 3 could have also been properly predicated on Counts 1, 4, or 7. In other words, unlike the petitioner in *St. Hubert*, Wordly cannot claim that Counts 1, 2, 4, and 7 were all invalid predicates.

The district court in *Wainwright v. United States*, No. 19-62364-CIV-COHN, 2020 U.S. Dist. LEXIS 63247, at *40 (S.D. Fla. Apr. 6, 2020), did not specifically address why the challenge there was jurisdictional in nature. But because Wainwright, like St. Hubert, had alleged that none of the predicate offenses for his § 924(c) conviction were valid, the issue, at least as framed by

Wainwright, was jurisdictional. That is not the case here. The *Wainwright* court cited to *Bane* which clarified that the court's jurisdiction is called into question only where the indictment charges conduct that is not a federal offense.

> The Supreme Court has instructed courts to use caution in labeling errors "jurisdictional." *See Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 81, 130 S. Ct. 584, 175 L.Ed.2d 428 (2009). Jurisdiction refers to "the courts' statutory or constitutional power to adjudicate the case*." United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L.Ed.2d 860 (2002) (internal quotation marks omitted); *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254, 130 S. Ct. 2869, 177 L.Ed.2d 535 (2010); *Union Pac*., 558 U.S. at 81, 130 S. Ct. 584. Federal district courts have statutory power to adjudicate prosecutions of federal offenses. 18 U.S.C. § 3231. Because the prosecution must be for a federal offense, we have held that when an indictment affirmatively alleges conduct that is not a federal offense, it does "not invoke the district court's jurisdiction to enter judgment or accept a guilty plea." *United States v. Brown*, 752 F.3d 1344, 1352–53 (11th Cir. 2014); accord *Peter*, 310 F.3d at 713, 715.

*Bane*, 948 F.3d at 1295.

For the same reasons, Wordly's reliance on *Adside v. United States*, No. 19-cv-24475 (S.D. Fla. Sept. 25, 2020), *Taylor v. United States*, No. 20-CV-22618-HUCK, 2020 U.S. Dist. LEXIS 151081 (S.D. Fla. Aug. 18, 2020), and *Wright v. United States*, No. 19-cv-24060 (Oct. 8, 2020) is misplaced. The movants were convicted of § 924(c) offenses based on valid predicates and, while acknowledging the valid predicates, argued that their convictions should be reversed because the jury *may* have based their conviction on an invalid predicate. As such, while *Adside*, *Taylor*, and *Wright* apparently assert that challenges arising under *Davis*, *Brown*, and *Stromberg* are always jurisdictional in nature, to the extent that that proposition is inconsistent with the holdings in *Peter* and *St. Hubert*, they should be abrogated.

As Wordly's challenge is not jurisdictional in nature, he must either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of his conviction in Count 3.

11

**B. Wordly Cannot Show Cause**

As Wordly concedes, this court is bound by the Eleventh Circuit's decision in *Granda*. There, the Eleventh Circuit determined that while prior to Granda's challenge few, if any, litigants had contended that the § 924(c) residual clause was unconstitutionally valid, because other litigants had challenged other portions of § 924(c) as vague, the tools existed for Granda to challenge § 924(c)'s residual clause as vague. *Granda*, 990 F.3d at 1288. The same is true here. For the reasons discussed in *Granda*, Wordly cannot show that his claim is "so novel that its legal basis [was] not reasonably available to [Wordly's] counsel." *Granda*, 990 F.3d at 1286 (quoting *Howard v. United States*, 374 F.3d 1068, 1072 (11th Cir. 2004)).

**a. The Court Should Deny Request for COA**

Wordly, however, argues that he is entitled to a Certificate of Appealability ("COA") on the issue of whether relief is barred by procedural default. A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). "When a district court denies a habeas petition on procedural grounds and does not reach the petitioner's underlying constitutional claim, the petitioner must show that (1) 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling;' and (2) 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Bell v. Fla. Atty. Gen.*, 614 F.3d 1230, 1231 (11th Cir. 2010) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "Thus, where a petition is denied on procedural grounds, determining whether a COA should issue 'has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding.'" *Id.* (quoting *Slack*, 529 U.S. at 484–85).

First, Wordly argues that the circuit courts are split as to whether under *Reed v. Ross*, 468 U.S. 1 (1984) there is a fourth instance in which novelty might constitute cause for procedurally defaulting a claim: when near-unanimous circuit precedent forecloses a claim. Wordly argues that while some Circuits recognize this fourth instance, others, including the Eleventh Circuit, reject it and instead follow *Bousley v. United States*, 523 U.S. 614 (1998), which states that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Even if the Eleventh Circuit had determined that Wordly could show cause if near-unanimous Eleventh Circuit precedent foreclosed his claim, Wordly cannot make this showing. Wordly filed for direct appeal on October 31, 2002. [CR-DE 224]. Prior to that date, there were no cases in the Eleventh Circuit addressing, let alone foreclosing, the claim that § 924(c)'s residual clause was unconstitutionally vague. There were also no cases in the Eleventh Circuit foreclosing the claim that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii)—which is similar to that of § 924(c)—was unconstitutionally vague.[2] Thus, Eleventh Circuit precedent had not foreclosed Wordly's claim prior to Wordly's direct appeal.

Second, Wordly claims that the Eleventh Circuit in *Granda* disagreed with the Seventh and Tenth Circuits, which held that under *Reed*, the Supreme Court's decision in *Johnson* was a clear break from the past that provided cause to excuse procedural default. This is untrue. The *Granda* court made clear that it based its decision as to procedural default on Granda's *Davis* claim. In doing so, the Granda court stated the following:

> The third category -- when a Supreme Court decision disapproves of "a practice [the Supreme Court] arguably has sanctioned in prior cases" -- is more complicated. For this category, we analyze "whether others were recognizing and raising the same or similar claims in the period preceding or concurrent with the petitioner's

---

[2] This is evidenced by the fact that *United States v. Devo*, 457 F. App'x 908 (11th Cir. 2012), which made that argument, was filed in the Eleventh Circuit some ten years after Wordly's direct appeal.

failure to raise his claim." Importantly, however, "[e]ven if others have not been raising a claim, the claim may still be unnovel if a review of the historical roots and development of the general issue involved indicate that petitioners did not 'lack the tools to construct their constitutional claim.' " Granda's ***Davis*** claim fits most neatly into this third category. (***Unlike the Johnson ACCA decision***, <u>Davis</u> did not overrule any prior Supreme Court precedents holding that the § 924(c) residual clause was not unconstitutionally vague.).

*Granda*, 990 F.3d at 1286–87 (emphasis added) (internal citations omitted). From this, it is clear that, contrary to Wordly's assertions, the *Granda* court, in fact, found that *Johnson* overruled prior Supreme Court precedent, albeit via dicta. The Court, however, analyzed the issue under Granda's *Davis* claim rather than under *Johnson*.

As neither of Wordly's arguments has merit, the court need not grant a COA as to whether relief is barred by procedural default. Jurists of reason would not find it debatable whether Wordly is procedurally barred for want of cause. Nor would jurists of reason find it debatable whether Wordly's petition states a valid claim of the denial of a constitutional right, because, as further detailed below, even if Wordly could overcome procedural bar, he cannot succeed on the merits.

## C.  Wordly Cannot Show Prejudice

Having found that Wordly cannot show cause for failing to raise this issue at trial or on appeal, the court need not address whether Wordly can show actual prejudice. Assuming *arguendo*, though, that Wordly were able to show cause, his claim would still fail, as he has failed to show prejudice. Wordly correctly points out that the *Granda* court did not and could not address whether a petitioner receiving a longer sentence than he would have due to his unlawful § 924(c) conviction constitutes prejudice. Wordly, however, does not show how this argument applies to his case. While Wordly argues that he "has challenged his § 924(c) conviction and the *consecutive* minimum mandatory sentence resulting from that conviction," he, in fact, has not.

As the Eleventh Circuit highlighted in its Order Granting Wordly's Application for Leave

Wordly's application seeks leave to challenge only his § 924(c) and (o) firearm-conspiracy conviction on Count 3 and does not mention his substantive § 924(c) convictions on Counts 6 and 9. We note conspiracy to commit Hobbs Act robbery was not a predicate for either Count 6 or Count 9. Rather, the predicates for Count 6 were a drug trafficking crime and a Hobbs Act robbery (Counts 4 and 5) and the predicates for Count 9 were a drug trafficking crime and an attempted Hobbs Act robbery (Counts 7 and 8).

[CR DE 402].

Wordly is correct in asserting that he was sentenced to two consecutive sentences—a 60-month sentence as to Count 6 and a 240-month sentence as to Count 9—but neither of those sentences was for Count 3. Indeed, Wordly appears to acknowledge that only "the 924(c) conviction in Counts Six and Nine increased his total term of imprisonment by 25 years," but the convictions in Counts 6 and 9 were not predicated on Count 2, conspiracy to commit Hobbs Act robbery, and have not been challenged by Wordly until now.

To this point, the only conviction Wordly has challenged as being unlawful is his conviction under Count 3. Thus, this Court reads Wordly's argument that his "unlawful 924(c) conviction" led to a consecutive minimum mandatory term of imprisonment, as stating that his Count 3 conviction led to a consecutive minimum mandatory term of imprisonment. This is not true. As Wordly makes no argument as to how his challenged Count 3 conviction led to a longer term of imprisonment, he has failed to show that he was prejudiced by that conviction.

## IV.   Wordly Cannot Succeed on the Merits

Wordly next argues that *Granda* and *Parker v. Sec'y for Dep't of Corrs*, 331 F.3d 764 (11th Cir. 2003) do not preclude relief because 1) Wordly's case is factually distinguishable and 2) *Granda* and *Parker* "employed an incorrect legal standard." We discuss both arguments below.

**A. Wordly's Case is not Distinguishable**

Wordly argues that because "[his] predicates had different goals, were committed on non-coterminous dates, and two of the convictions were dismissed by the Court after the defense's Rule 29 motion," and because attempted Hobbs Act robbery is not a categorical crime of violence, there is a substantial likelihood that the non-qualifying or dismissed predicates were the basis of his conviction in Count 3.

First, Movant's argument that the predicate convictions present two distinct goals that do not intersect, namely robbery and distribution of drugs, is unsupported by the trial record. While it is true that the home invasions occurred on different dates and that the second home invasion did not include Russell or Cannon, it is clear from the trial court record that the objective of both home invasions was to forcibly take from the homes (1) money to pocket and (2) valuable items and multi-kilogram quantities of cocaine to sell. Therefore, the goals of robbery and distribution necessarily intersect, as the goal of distribution could not have been achieved without first achieving the goal of robbery.

Second, the jury unanimously found Wordly guilty of conspiracy to possess with intent to distribute cocaine (Count 1), conspiracy to commit Hobbs Act robbery (Count 2), attempted possession with intent to distribute cocaine for the June 20, 1997 home invasion (Count 4), possession of a firearm in relation to, and in furtherance of, a crime of violence and drug trafficking crime for the June 20, 1997 home invasion (Count 6), attempted possession with intent to distribute cocaine for the August 1, 1997 home invasion (Count 7), and possession of a firearm in relation to, and in furtherance of, a crime of violence and drug trafficking crime for the August 1, 1997 home invasion (Count 9). And while Wordly points out that he was acquitted of his convictions for Hobbs Act Robbery for the June 20, 1997 home invasion (Count 5) and attempted Hobbs Act

robbery for the August 1, 1997 home invasion (Count 8), the jury unanimously found him guilty of these crimes as well.

Thus, it is clear that although the jury's findings did not rest on the same set of events, the jury still found beyond a reasonable doubt that on both occasions Wordly and his accomplices conspired to rob homes that they thought had cocaine, valuables, and money in order to, *inter alia*, sell the cocaine.

Third, the evidence supporting Wordly's conviction of conspiracy to possess a firearm in furtherance of the above-mentioned crimes, as charged in Count 3, includes (1) the multiple meetings Wordly had with his co-conspirators before the June 20, 1997 home invasion where the men planned to enter the home with guns, tie up the occupants with duct tape, and forcibly take cocaine from the home in order to sell it later; (2) the meeting at Bell's house the night of the June 20, 1997 home invasion where Wordly brought a .25 caliber pistol which he gave to Russell in exchange for Russell's .45 caliber pistol; (3) the meeting at Bell's house the afternoon of the August 1, 1997 robbery where the men planned to again use guns to rob the house of drugs, money, and expensive musical equipment; (4) the meeting the night of the August 1, 1997 robbery where the men again brought guns, duct tape, ski masks, and gloves.

Accordingly, the jury could not have found that Wordly conspired to possess a firearm in furtherance of his robbery conspiracies charged in Count 2, without also finding that at the same time he conspired to possess the firearm in furtherance of his conspiracies to possess cocaine as charged in Count 1 and his attempts to possess the cocaine, as charged in Counts 4, and 7. The predicates of the individual home invasions are therefore still inextricably intertwined.

Based on the foregoing, Wordly has failed to show a substantial likelihood that the jury relied solely on Count 2 to predicate his conviction under Count 3.

### a. The Court Should Deny Movant's Request for COA

Movant also argues that the attempted Hobbs Act robbery charged in Count 5, for which he was acquitted pursuant to Rule 29, is not a valid predicate for his Count 3 conviction because attempted Hobbs Act robbery is not a categorical crime of violence. He further argues that he is entitled to a COA on the issue of whether attempted Hobbs Act robbery qualifies as a categorical crime of violence. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal; the prisoner must first obtain a COA. *See* 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). "When a district court denies a habeas petition on procedural grounds and does not reach the petitioner's underlying constitutional claim, the petitioner must show that (1) 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling;' and (2) 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Bell v. Fla. Atty. Gen.*, 614 F.3d 1230, 1231 (11th Cir. 2010) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[N]o COA should issue where the claim is foreclosed by binding circuit precedent because reasonable jurists will follow controlling law." *JOHANN BRITO, Petitioner-Appellant, v. UNITED STATES OF AMERICA, Respondent-Appellee.*, No. 20-14077-C, 2021 WL 3008189, at *1 (11th Cir. Feb. 16, 2021) (quoting *Hamilton v. Sec'y, Fla. Dep't of Corr.*, 793 F.3d 1261, 1266 (11th Cir. 2015)).

Under *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018), attempted Hobbs Act robbery is still considered a categorical crime of violence. *See Brito*, 2021 WL 3008189, at *1 ("We have held that attempted Hobbs Act robbery categorically qualifies as a crime of violence under § 924(c)(3)(A)'s elements clause."). While the issue has been appealed to the Supreme

18

Court, *St. Hubert* is still binding precedent in the Eleventh Circuit at this time. Thus, the court need not grant a COA as to whether attempted Hobbs Act robbery is a categorical crime of violence.

**B. The Standard in *Granda* is Applicable and Binding**

Wordly next argues that *Granda* and *Parker* employed an incorrect legal standard by failing to apply the categorical approach. Specifically, Wordly contends that under *Stromberg v. California*, 283 U.S. 359 (1931) and *Parker v. Sec'y for Dep't of Corrs*, 331 F.3d 764 (11th Cir. 2003), the general verdict here must be set aside because there was no way to know whether the jury relied on the invalid predicate of conspiracy to commit Hobbs Act robbery to convict Wordly under Count 3. As discussed in *Granda*, this argument is a losing one. After the Eleventh Circuit decided *Parker*, the Supreme Court held in *Hedgpeth v. Pulido* that *Stromberg* error is subject to the *Brecht*[3] harmless error standard. *Granda*, 990 F.3d at 1294 (citing *Hedgpeth*, 555 U.S. 57, 58, 62 (2008)).

Under the *Brecht* harmless error standard, reversal is warranted only when the petitioner suffered "actual prejudice" from the error. *Brecht*, 507 U.S. at 637. In other words, "the harmless error standard mandates that 'relief is proper only if the ... court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful.'" *Foster*, 996 F.3d at 1107 (citing *Davis v. Ayala*, 576 U.S. 257, 267– 68 (2015)). "Thus, it is proper to look at the record to determine whether the invalid predicate actually prejudiced the petitioner -- that is, actually led to his conviction - - or whether the jury instead (or also) found the defendant guilty under a valid theory." *Granda*, 990 F.3d at 1294.

---

[3] *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

As this Court determined, it is undeniable that Wordly's valid predicates are inextricably intertwined with the invalid Hobbs Act conspiracy predicate. Thus, "[t]here can be no grave doubt that the inclusion of the invalid predicate did not have a substantial influence in determining the jury's verdict in this case." *See Foster*, 996 F.3d at 1108 (citing to *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). Therefore, if there was any error here, it was harmless, and Wordly's argument here is unsuccessful.

### C.  Wordly was not Charged with a Crime for Engaging in Constitutionally Protected Activity

Finally, Wordly contends that even if the predicate convictions here are inextricably intertwined, under *Zant v. Stephens*, 462 U.S. 862 (1983), his conviction as to Count 3 must still be set aside. [Cv-DE 18, at 13]. Specifically, Wordly states that in *Zant*, the Supreme Court identified two rules created by *Stromberg*. The first rule, which the Eleventh Circuit analyzed in *Granda*, is that a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground. *Zant*, 462 U.S. at 881.

The second rule, which Wordly argues applies in this case, is that "when a single-count indictment or information charges the commission of a crime by virtue of the defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as 'intertwined' and have rested the conviction on both together." *Id*. at 883. Wordly thus claims that his conviction as to Count 3 must be set aside, because under the second rule in *Zant* "the judgment cannot be affirmed unless all bases are constitutionally valid." [Cv-DE 14]. This reading is too broad.

20

In *Zant*, a jury found the petitioner guilty of murder and imposed the death penalty. When doing so, the jury could consider all facts and circumstances presented in mitigation or aggravation during the sentencing proceeding. *Zant*, at 865–66. The jury was also instructed that in order to impose the death penalty, it must have designated in writing the existence of one or more statutory aggravating circumstances. *Id*. at 866. The jury found that one aggravating circumstance in petitioner's case was that petitioner had a "substantial history of serious assaultive criminal convictions." *Id*. at 866-67. The jury also found at least two other aggravating circumstances. *Id*. at 867. While the petitioner's appeal was pending, the Georgia Supreme Court held that the aggravating circumstance, "substantial history of serious assaultive criminal convictions," was unconstitutionally vague. *Id*. The two other aggravating circumstances were still valid. *Id*. The petitioner in Zant then challenged his sentence under both of the aforementioned *Stromberg* rules. *Id*. at 870. When explaining the second rule, the *Zant* court looked to the rule's origin:

> In *Stromberg*, a member of the Communist Party was convicted of displaying a red flag in violation of the California Penal Code. The California statute prohibited such a display (1) as a "sign, symbol or emblem" of opposition to organized government; (2) as an invitation or stimulus to anarchistic action; or (3) as an aid to seditious propaganda. This Court held that the first clause of the statute was repugnant to the federal Constitution and found it unnecessary to pass on the validity of the other two clauses because the jury's guilty verdict might have rested exclusively on a conclusion that Stromberg had violated the first.

*Id*. at 880.

The Court then examined its application of the second rule in cases following *Stromberg*, including *Thomas v. Collins*, 323 U.S. 516, 528–529 (1945), and *Street v. New York*, 394 U.S. 576, 586–590 (1969). *Id*. at 882-83. Specifically, the court explained that "[t]he second rule derived from Stromberg, embodied in *Thomas* and *Street*, applies only in cases in which the State has based its prosecution, at least in part, on a charge that constitutionally protected activity is unlawful." *Zant*, 462 U.S. at 883–84. In other words, the rule mandates that if a single-count

indictment charges a defendant with a crime that the defendant could have committed by engaging in both constitutionally protected and unprotected acts, a general guilty verdict based on such an indictment cannot stand, because the jury may have relied solely on the constitutionally protected act or intertwined the acts and thus convicted the defendant for engaging in constitutionally protected activity. The *Zant* Court concluded that the rule was not applicable to the petitioner's case. *Id*. at 884. In doing so, the Court detailed the following:

> In *Stromberg*, *Thomas*, and *Street*, the trial courts' judgments rested, in part, on the fact that the defendant had been found guilty of expressive activity protected by the First Amendment. In contrast, in this case there is no suggestion that any of the aggravating circumstances involved any conduct protected by the First Amendment or by any other provision of the Constitution. Accordingly, even if the *Stromberg* rules may sometimes apply in the sentencing context, a death sentence supported by at least one valid aggravating circumstance need not be set aside under the second *Stromberg* rule simply because another aggravating circumstance is "invalid" in the sense that it is insufficient by itself to support the death penalty.

*Id*.

This rule is clearly inapposite here, too.  First, similar to *Zant* and as previously discussed, at least three of the counts Wordly was convicted of are still valid predicates for §§ 924(o) and 924(c) convictions. Second, the indictment here contained fifteen counts, not one, and Wordly was charged with nine of those fifteen counts. Third, and perhaps most importantly, even if we examined Wordly's Count 3 charge and its potential predicates in isolation, like in *Zant*, the indictment here does not base the charge in Count 3 on any constitutionally protected activity. It bases the charge in Count 3 on, *inter alia*, conspiracy to commit Hobbs Act robbery. And while conspiracy to commit Hobbs Act robbery may no longer be a valid predicate for §§ 924(o) and 924(c) convictions, it certainly *cannot* be considered a constitutionally protected activity. In fact, conspiracy to commit Hobbs Act robbery is still a crime in violation of the laws of the United States. This argument fails.

V.    <u>Recommendations</u>

Based on the foregoing, it is recommended that the Motion to Vacate be **DENIED**, and that no certificate of appealability be issued.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report, including any objections with regard to the denial of a certificate of appealability.

**SIGNED** this 13th day of October, 2021.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Federico Moreno**; and
      **All Counsel of Record via CM/DE**